^Thursday, March 24. The Judges delivered their opinions.
JUDGE TUCKER.
Dawson, the appellant, as trustee of Robert Carter of West-moreland, produced to the Court of Frederick County, a deed of emancipation executed by him to certain negroes therein named, and prayed the Court to admit the same to record, and to certify on their record, that as many of the negroes (all of whom were then in presence of the Court) as appeared to their judgment to be so, were of sound mind and body.; the males above the age of 21, and the females above the age of 18, and all under 45 years. This motion was objected to on the part of Mr. Carter’s executor; and his counsel then and there read to the Court a bill previously filed, and in which a subpoena had been executed on Dawson, and returned, and moved the Court, as a Court of Chancery, that it would, by an injunction, restrain Dawson from disposing of, or in any manner inferfering with, the slaves referred to in Robert Carter’s deed of trust to him, that were undis-posed of at that time. The Court being satisfied that the negroes present were some of them included in Carter’s deed, and that Dawson ought to be restrained, awarded the injunction, and after that Dawson again renewed his motion, as before, which the-Court refused.- Dawson then applied for and obtained a conditional mandamus from, the District Court, upon the return of which the Justices made a return at large to the preceding effect: upon which Dawson moved for a peremptory mandamus, which motion being overruled, he has appealed to this Court.
The County Courts in Virginia act in a variety of capacities and characters. They are Judges of all suits and controversies arising within their Counties, either in actions at common law, or in suits in Chancery ; or in controversies concerning wills, letters of administration, mills, roads, &c.
In causes at common law and in Chancery *there must be both a complainant and a defendant before the Court can have jurisdiction, or do any act. In the cases of wills, letters of administration, mills, &c. their jurisdiction commences upon an ex parte motion, and the person meaning to controvert it makes himself a voluntary defendant; whereas, in suits at common law, and in Chancery, the defendant is in general an involuntary one. In all these cases, however, they act as a forensic Court, if there bo a controversy instituted in either of the above modes. They act moreover as a board of police for the country; and, in this character, have not forensic jurisdiction; as in laying the County levy, recommending sheriffs, coroners, militia officers, and justices of the peace: in all which they act merely as ministerial persons: and though they act in all these several characters and capacities in the same day, the character in which they act is determined by the nature of the case. When a cause is begun as. a suit at common law, they cannot make any order in it as a Court of Chancery, but must proceed according to the course of the common law until there is a final judgment therein. Nor can they when proceeding as a Court of Chancery take any step not warranted by the usual course of proceeding in Courts of Equity. If, for example, a suit be instituted at common law for the recovery of slaves by an action of det-inue, and the defendant being unable, or unwilling to give special bail, should fail to enter his appearance, and suffer an office judgment to be confirmed against him, it would not be competent to him, at the moment that a jury was about to be sworn to execute a writ of inquiry, to produce to the Court a bill in equity against the plaintiff, and move the Court for an injunction to prevent the plaintiff from proceeding to> execute his writ of inquiry, whatever equity his case might present. The plaintiff must be permitted to proceed according to the regular course of the common law; but, when he has obtained his judgment, he may be inhibited from issuing his execution until the matter shall be heard in equity; as is everyday’s practice. So when a deed is offered to be proved, *the Court quoad hoc sits as a Court of Registry, only. It is to examine the witnesses as to the execution of the deed, or to re *359 ceive the acknowledgment, if presented and offered to be acknowledged by the maker of it, as a matter of right and duty. The contents of the deed, further than to know whether it ought to be proved by one, two, or three, or more witnesses, in order to be admitted to record, are not a subject for their inquiry; much less the operation or effect of it. Nor can they when a deed is thus brought before them for probate and recording only, avail themselves of their character as a judicial Court, and refuse to admit the proof, because, by possibility, the maker of the deed may have no right as against other persons to make such a deed. This case is so nearlv like that of Rex v. Justices of Derbyshire, (a) that it seems to me to determine the question. A motion was made for a mandamus to register a certain tenement, which was certified to the Quarter Sessions as a place set apart for the meeting of protestant dissenters: the Justices shewed cause against the motion; but the Court was of opinion that in registering and recording the certificate, the Justices were merely ministerial, and that, after a meetinghouse had been duly registered; still, if the persons resorting to it did not bring themselves within the act of toleration, such registry will not protect them from the penalties of the law.” So in the case before us, I consider the Justices as merely ministerial to the proof and recording the deed: still, if any of the persons therein named are not entitled to their emancipation under the deed from Robert Carter to the appellant Dawson, the acknowledgment and recording of Dawson’s deed will not release them from slavery. I am, for these reasons, of opinion, that the District Court ought to have awarded a peremptory mandamus, and that the judgment be reversed, with directions accordingly.
JUDGE ROANE.
Not knowing that the deed in question, in this case, is not justified by the act of 1782, respecting ^emancipation; and if not, believing that the recording of it will give it no additional validity, 1 am of opinion that it ought to have been recorded; to avail quantum valere potest. I therefore think that the County Court erred in not permitting it to be proved and recorded, and that a peremptory mandamus ought to issue.
JUDGE FEEMING.
It appears to me both from the case of The King v. The Justices of Derbyshire, (b) and from the nature and reason of the case, that the Justices of Erederick County, when they refused to admit to record the deed presented by Dawson, were acting in their ministerial character, merely: and, as such, were bound to receive the deed, and to order it to be recorded; without considering what was to be its effect or operation at a future day. I am, therefore, of opinion, that a peremptory mandamus ought to be awarded.
By the whole Court, (absent JUDGE EYONS.)
“The judgment of the District Court reversed, and a peremptory writ of mandamus awarded, to be directed to the Justices of the County Court of Frederick, commanding them to receive proof or acknowledgment of the deed of emancipation in the proceedings mentioned, and admit the same to record, and to certify on their record that as many of the persons named in the said deed as then appeared to their judgments to be so, were of sound mind and body on the 3d day of April, 1805, (when they were before the Court of the said County, and the appellant offered to acknowledge the said deed,) the males then above the age of twenty-one years and under forty-five, and the females then above the age of eighteen years and under forty-five.”

 1 W. Bl. Rep. 606.

 1 W. Bl. Rep. 606.